```
                                                    USDC SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #:
-------------------------------------------------------------- X   DATE FILED: 11/30/2015
CHRISTINA MELITO, CHRISTOPHER LEGG,              :
ALISON PIERCE and WALTER WOOD,                   :
individually and on behalf of all others similarly :
situated,                                        :    14-CV-02440 (VEC)
                                   Plaintiffs,  :    15-CV-00039 (VEC)
                                                 :    15-CV-02370 (VEC)
                      -against-                  :
                                                 :      MEMORANDUM
AMERICAN EAGLE OUTFITTERS, INC., AEO             :    OPINION AND ORDER
MANAGEMENT CO. and EXPERIAN                      :
MARKETING SOLUTIONS, INC.,                       :
                                                 :
                                   Defendants.   :
-------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Plaintiffs Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood (collectively, "Plaintiffs") bring this putative class action against American Eagle Outfitters and AEO Management Co. (collectively, "AEO") and Experian Marketing Solutions, Inc. ("Experian") (collectively, "Defendants"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). In the Consolidated Third Amended Complaint ("TAC"), Plaintiffs, individually and on behalf of four potential classes, allege Defendants violated the TCPA by sending them unsolicited commercial text messages ("Spam Texts"). Defendant Experian moves to dismiss the TAC in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the following reasons, Experian's Motion to Dismiss is GRANTED.[1]

---

[1] The AEO Defendants filed a Motion for Leave to File a Third Party Complaint on November 18, 2015, against Experian, eBay Enterprise, Inc. and eBay Enterprise Marketing Solutions, Inc. asserting claims for contractual indemnity, breach of contract, common law indemnification, and negligence. Dkt. 153. This decision only addresses the claims against Experian in the TAC and does not address AEO's claims against Experian in the proposed Third Party Complaint.

## BACKGROUND[2]

Plaintiffs' claims arise from a marketing campaign that involved using text messages or "Short Message Services" ("SMS") to advertise. TAC ¶¶ 20, 27. AEO sells clothing, accessories, and personal care products under the American Eagle Outfitters and Aerie brands. *Id.* ¶¶ 25–26.[3] Experian provides marketing services, including mass text message advertising, to clients such as AEO. *Id.* ¶ 31. According to Plaintiffs, AEO "makes, either directly or through Experian, SMS calls using ATDS [Automatic Telephone Dialing System] equipment and software" to cellular telephones whose owners have not provided express consent to receive such messages. *Id.* ¶ 28 (defining these SMS as "Spam Texts"). Plaintiffs allege that AEO hired Experian "to send Spam Texts on its behalf in November 2013," *id.* ¶ 32, and that starting around November 21, 2013, Experian "caused the transmission of Spam Texts on behalf of AEO." *Id.* ¶ 38. In explaining how Experian "caused texts to be sent on behalf of AEO," *id.* ¶ 33, the TAC presents the following chart, which illustrates, in relevant part, the program flow for transmitting Spam Texts to consumers:

---

[2] The facts are taken from the TAC. At this stage in the litigation, the Court assumes that all facts alleged in the TAC are true. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

[3] Defendant American Eagle Outfitters, Inc. is a publicly-traded retail company, and Defendant AEO Management Co. is the subsidiary of American Eagle Outfitters, Inc. that operates its website and promotions. *Id.* ¶¶ 25–26.



*Id.* ¶ 33. According to the TAC:

> 1) AEO provides Experian with the campaign request form; 2) AEO deploys to Experian a list of numbers to which texts will be sent ("Campaign Ready File"); 3) Experian sends the information to Archer USA, Inc.'s ("Archer") texting platform; 4) Experian schedules text messages to be sent; and 5) text messages are sent.

*Id.* ¶ 34. Plaintiffs contend that "there is no human intervention in the actual dialing of the texts" and "the texts are sent out from a database list en masse by the thousands without human intervention." *Id.* ¶ 37. AEO approves the content prior to Experian causing the Spam Texts to be sent, *id.* ¶ 39, and Experian provides AEO with reports on the Spam Texts sent, *id.* ¶¶ 40.

The TAC asserts that "Experian had control over the texts sent" insofar as Experian contracted with AEO to send the texts, received the campaign request form and the campaign

3

ready file from AEO, sent the information to Archer[4] to use Archer's platform, scheduled the text messages to be sent, and sent AEO reports on the results of the text messaging campaigns. *Id.* ¶¶ 42, 44. The TAC contends that "to the extent that Experian is not directly liable, it is vicariously liable for the actions of Archer to the extent that Archer is deemed to have sent the texts. Archer is Experian's agent because Experian used Archer's texting platform to send the texts." *Id.* ¶ 43.

The TAC alleges facts specific to each individual plaintiff. Plaintiffs Melito and Woods never provided "prior express consent, either written or oral, to receive Spam Texts on [their] cellular telephone[s] from, or on behalf of, AEO." *Id.* ¶¶ 49, 81. Plaintiffs Legg and Pierce[5] both texted STOP in response to several text messages sent on behalf of AEO. *Id.* ¶¶ 55–61, 67–68. Notwithstanding their requests not to receive texts, both continued to receive messages from AEO. *Id.* ¶¶ 62, 69.[6]

---

[4]     Archer USA, Inc. is not a named defendant, apparently because it has filed for bankruptcy.

[5]     Pierce allegedly provided consent to AEO for receipt of texts but then later decided she no longer wanted to receive them. *Id.* ¶¶ 66–67.

[6]     The TAC alleges two putative national subclasses specific to Experian, under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

> Experian Spam Text Subclass: All persons in the United States who: (a) received a text message sent by Experian and/or a third party acting on Experian's behalf; (b) promoting AEO's goods or services; (c) on their cellular telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins November 21, 2013 to trial.

> Experian Revocation Subclass: All persons in the United States who: (a) received a text message sent by Experian and/or a third party acting on Experian's behalf; (b) after unsubscribing from receiving further text messages from Experian; (c) on their cellular telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins November 21, 2013 to trial.

*Id.* ¶ 86.

Plaintiffs assert four causes of action: two for violations of section 227(b)(1)(A) of the TCPA (counts 1 and 3), *id.* ¶¶ 94–98, 104–108, and two for "knowing and/or willful" violations of section 227(b)(1)(A) of the TCPA (counts 2 and 4), *id.* ¶¶ 99–103, 109–113.  The first and second causes of action are "[b]rought on behalf of Plaintiffs Melito and Wood and members of the AEO Spam Text Class and Experian Spam Text Subclass." *Id.* ¶¶ 94–103.  The third and fourth causes of action are "[b]rought on behalf of Plaintiffs Legg and Pierce and members of the AEO Revocation Class and Experian Revocation Subclass." *Id.* ¶¶ 104–113.  Plaintiffs assert that each of the four causes of action is brought "against Experian as the sender of the Spam Texts" and AEO because it is liable for the actions of Experian as well as its own actions in causing the Spam Texts to be sent without consent. *Id.* ¶¶ 95, 100, 105, 110.  Plaintiffs seek statutory damages and injunctive relief. *Id.* ¶¶ 97–98, 102–103, 107–108, 112–113.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Inc.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

at 555). Similarly, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in *Iqbal*). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

> In relevant part, the TCPA makes it unlawful for anyone
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> . . .
>
> (iii) to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b). *Id.* § 227(b)(3). The Federal Communication Commission ("FCC") was tasked with implementing the requirements of section 227(b). *Id.* § 227(b)(2).

### I. Plaintiffs Fail To Plead Adequately That Experian Is Directly Liable Under Section 227(b)(1)(A)(iii) of the TCPA.

Experian argues that Plaintiffs fail to plead adequately that Experian has any direct liability because Plaintiffs fail to allege that Experian "ever actually *sent* them a single text message . . ." or "'made' or 'physically placed' *any* text messages," as required under section 227(b)(1)(A)(iii) of the TCPA. Def. Mem. at 2, 9 (Dkt. 123) (emphasis in original). Experian further contends that Plaintiffs' allegations that Experian "caused" the texts to be sent are conclusory and fall short of pleading direct liability under the statute. *Id.* at 9. In response, Plaintiffs argue that: (1) as provided in the TCPA implementing regulations, 47 C.F.R. §

64.1200(a)(2), "liability flows to either someone who 'initiates, or causes to initiate'" the text message, Pls. Opp'n, at 7 (Dkt. 130) (quoting 47 C.F.R. § 64.1200(a)(2)); (2) scheduling a text to be sent is the same as sending a text, *id.* at 8; and (3) Experian was "so involved in the placing of" the specific text messages at issue as to be directly liable for initiating them, *id.* at 8.  As discussed below, Experian is correct that "none of plaintiffs' factual allegations, even if accepted as true, establishes direct liability on Experian's part under the TCPA because, put simply, none of those actions involves the making, or physical placement, of a text message."  Def. Mem. at 9.

In its brief opposing Experian's Motion to Dismiss, Plaintiffs rely on 47 C.F.R. § 64.1200(a)(2), one of the implementing regulations of the TCPA.  That reliance is misplaced.  Section 64.1200(a)(2) provides:

> (a) No person or entity may:
>
> . . .
>
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system . . . , other than a call made with the prior express written consent of the called party . . . .

47 C.F.R. § 64.1200(a)(2).  As Defendant notes, the TCPA in section 227(b)(3) contemplates a private right of action based on "a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation . . . " or both.  47 U.S.C. § 227(b)(3).  But the TAC claims violations only of TCPA section 227(b)(1)(A)(iii); it does not assert claims under the implementing regulations.[7]  Moreover, section 64.1200(a)(2) does not purport to define "make"

---

[7] Plaintiffs' understanding of its ability to assert violations under either the statute or the regulations or both is consistent with the Court's understanding.  Plaintiffs, however, do not now assert claims under the regulations.  In the prior version of Plaintiffs' Complaint, Plaintiffs explicitly claimed, in their fifth and sixth causes of action, violations and knowing and willful violations under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).  Second Am. Compl. ¶¶ 104–13 (Dkt. 88).  Section 227(c)(5) provides a private right of action for violations of section 227(c) relating to protection of subscriber privacy rights.  In substance, section 64.1200(d) requires any person or entity that initiates calls for telemarketing purposes to residential telephone subscribers to maintain a list of persons who

as used in section 227(b)(1)(A)(iii), and Plaintiffs have not cited any authority to support its argument that section 64.1200(a)(2) should guide the Court's interpretation of the word. Thus, contrary to Plaintiffs' argument that the Court should focus on whether the TAC adequately alleges that Experian caused the texts to be "initiated" under section 64.1200(a)(2), the language of section 227(b)(1)(A)(iii) controls whether Experian is directly liable.

The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that "make" a telephone call or text. 47 U.S.C. § 227(b)(1)(A)(iii). Although the Second Circuit has not weighed in, many of the courts that have considered this provision have held that the verb "make" imposes civil liability only on the party that places the call or text. *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301–02 (D. Nev. 2014) (associating the party who "made" the call with "the party who actually sent the text message to [Plaintiff]"); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and "[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was . . . a separate provider of text-message based services . . . .").[8]

In the TAC, Plaintiffs fail to allege adequately that Experian actually sent any texts. Instead, Plaintiffs assert in an entirely conclusory fashion that Experian "caused texts to be sent

---

request not to receive telemarketing calls. 47 C.F.R. § 64.1200(d). Those claims were dropped from the TAC, as was Plaintiff Ryan Metzger and Defendant eBay Enterprise, Inc., f/k/a eBay Enterprise Marketing Solutions.

[8]     Plaintiffs seem to argue that the cited cases do not rule out the possibility that persons or entities that cause offending texts to be initiated could be directly liable. Pls. Opp'n at 7. Plaintiffs' argument is unconvincing because, unlike other sections of the TCPA and implementing regulations that use the word "initiate," the language of section 227(b)(1)(A)(iii) instead uses the word "make." The Court is persuaded by the discussion of this distinction in *Jackson*, 88 F. Supp. 3d at 134–35, and Plaintiffs, do not cite case law to support an interpretation under section 227(b)(1)(A)(iii) that is different than the one set forth in *Jackson*.

on behalf of AEO," TAC ¶ 33, and that, as to each of the individually-named Plaintiffs, "AEO and Experian are responsible for sending" the Spam Texts and have sent a large number of Spam Texts to persons in New York, Florida, California and throughout the United States.  *Id.* ¶¶ 50–51, 63–64, 70–71, 82–83.  Plaintiffs' class action allegations are similarly conclusory, alleging that there is a class comprised of:  "All persons in the United States who: (a) received a text message sent by Experian and/or a third party acting on Experian's behalf." *See id.* ¶ 86 (defining the purported "Experian Spam Text Subclass" and the "Experian Revocation Subclass").

      The factual allegations culminating in those conclusory assertions are an interesting mix of active and passive voice allegations; the TAC uses the active voice to allege who took each step up to the critical allegation regarding who sent the offending text messages:

> 1) AEO provides Experian with the campaign request form; 2) AEO deploys to Experian a list of numbers to which texts will be sent ("Campaign Ready File"); 3) Experian sends the information to Archer USA, Inc.'s ("Archer") texting platform; 4) Experian schedules text messages to be sent; and 5) text messages are sent.

TAC ¶ 34.  Similarly, in Plaintiffs' flow chart, Plaintiffs use the active voice for virtually every step seemingly related to Experian up to the final and critical step of sending the offending texts: "Experian routes campaign ready file to Archer," "Archer processes campaign ready file," "Automated process creates audience segments on Archer platform," "Experian team manually schedules messages for each segment," and "SMS messages deployed (internal tests + live broadcasts)." *Id.* ¶ 33.  The absence of an allegation of who actually "made" or physically placed the text messages is not lost on the Court.  Plaintiffs' conclusory assertions that Experian sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement.  Because Plaintiffs do not plead that Experian "made," *i.e.*, physically placed or

actually sent, the text messages, the TAC fails to state a claim that is plausible on its face under section 227(b)(1)(A)(iii) of the TCPA.[9]

Finally, Plaintiffs argue that they have adequately stated a claim against Experian because "a defendant may be so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." Pls. Opp'n at 8.  For this argument, the Plaintiffs appear to rely on dicta from an FCC Ruling, *In the Matter of the Joint Petition filed by Dish Network LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, that discusses whether vicarious liability could be imposed under section 227(b) of the TCPA.  28 FCC Rcd. 6574, 6583 (2013) ("And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it — by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example.").  This dicta, however, is directed at the FCC's interpretation of the word "initiate" as used in a different provision of the TCPA, section 227(b)(1)(B) and implementing regulation section 64.1200(c)(2), in the context of the liability of "sellers," and is, therefore, not directly applicable to the instant case.  As discussed previously, the specific provision at issue in this case is section 227(b)(1)(A)(iii), which does not use the verb "initiate" but instead uses the verb "make."  Moreover, as *Dish Network* discusses, "seller" is defined in the implementing regulations section 64.1200(f)(9), 28 FCC Rcd. at 6583 n.80, as "the person or

---

[9] Plaintiffs' argument that "scheduling" and "sending" are one and the same is, again, unconvincing.  Pls. Opp'n at 8.  Plaintiffs argue that "[t]he chart/overview shows that as a result of the scheduling, the texts are deployed" and "[t]here is no step in between."  But Plaintiffs' flow chart itself seems to concede that the two are, in fact, separate, individual steps—stating in one part of the chart, "Experian team manually schedules messages for each segment," and, in the next, "SMS messages [are] deployed (internal tests + live broadcasts)." TAC ¶ 33.

entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase . . . of . . . goods[] or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9). The relied-upon dicta is thus also inapplicable because the allegations in the TAC arguably qualify AEO, not Experian, as a "seller" under this definition, inasmuch as the alleged text messages advertised and encouraged the purchase of AEO-related products.[10]

In short, Plaintiffs fail to plead adequately that Experian is directly liable for violations of section 227(b)(1)(A)(iii) of the TCPA.

## II. Plaintiffs Fail To Plead Adequately That Experian Is Vicariously Liable Under the TCPA

Defendant Experian also argues that Plaintiffs "have failed to plead facts sufficient to establish vicarious liability on Experian's part." Def. Mem. at 10; *see also* Def. Reply at 6. Plaintiffs argue that they properly alleged Archer is a sub-agent hired by Experian, Archer's role was minor, and Experian controlled every facet of the texting campaign. Pls. Opp'n at 13. Even assuming that there is vicarious liability for a violation of section 227(b) of the TCPA, Plaintiffs fail to plead facts establishing that Archer was Experian's agent.[11]

---

[10]    For these reasons, both *Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 63052, at * 5–6 (N.D. Ill. Feb. 20, 2015) and *Smith v. State Farm Mut. Auto. Ins.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014), which involve actual alleged "sellers," are inapposite and distinguishable from the instant case.

[11]    Both parties discuss whether the TCPA section 227(b) provides for vicarious liability at all. Def. Mem. at 10; Pls. Opp'n at 10–11. Experian, however, clarified in its Reply brief that its motion assumed that there could be vicarious liability under Section 227(b), and, even with that assumption, Plaintiffs still fail to plead that Archer was Experian's agent pursuant to common law agency principles. Def. Reply at 6 n.2. The Court is again persuaded by the discussion of this issue in *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("A number of courts have considered whether a defendant may nonetheless be held vicariously liable under the TCPA in accordance with traditional tort principles. The overwhelming majority have answered that question in the affirmative."), and would be inclined to hold that there can be vicarious liability under the TCPA.

The parties also dispute whether, if the TCPA allows for vicarious liability, such theory of relief is available only against "sellers" of goods and services, like AEO, or more broadly against any company that offers telemarketing services in alleged contravention of the TCPA, like Experian. Def. Mem. at 10–13; Pls. Opp'n at 8–10; Def. Reply at 9–10. The Court notes the discussion in *Dish Network* that addresses vicarious liability as a means of furthering the policy of the TCPA:

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency, § 1.01 (2006); *see also Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir. 2006) ("Agency is a legal concept that depends on the existence of three elements: (1) 'the manifestation by the principal that the agent shall act for him'; (2) 'the agent's acceptance of the undertaking'; *and* (3) 'the understanding of the parties that the principal is to be in control of the undertaking.'" (quoting *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 n.13 (2d Cir. 1994) (emphasis in original))).  The Second Circuit in *Cleveland* noted that:

> The question whether an agency relationship exists is highly factual, however, and can turn on a number of factors, including: "the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done."

---

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. . . .  We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. . . .  By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. . . .  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

28 FCC Rcd., at 6588; *see also Lucas v. Telemarketer Calling From (407)476-5670 & Other Tel. Nos.*, No.12-630, 2014 WL 1119594, at *7–8 (S.D. Ohio Mar. 20, 2014) (addressing similar policy arguments).  *Dish Network*, however, does not expressly contemplate these policy arguments as they relate to a middle, third-party telemarketer, whose actions lie between the seller and the ultimate sender of the text.

Regardless, the Court need not resolve this issue.  Even if vicarious liability applies to Defendants such as Experian, Plaintiffs have failed to plead adequately an agency relationship between Experian and Archer or another third-party entity, and, therefore, have failed sufficiently to assert vicarious liability under section 227(b)(1)(A)(iii) of the TCPA.

448 F.3d at 522 (quoting *Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 375–76 (2d Cir. 1975)). With regards to control, "[i]t is clear that 'the right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times.'" *Cleveland*, 448 F.3d at 522 (quoting Restatement (Second) of Agency § 14 cmt. a). "[T]he control asserted need not 'include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective.'" *Id.* (quoting Restatement (Second) of Agency § 14 cmt. a).[12]

Experian is correct that Plaintiffs fail to allege adequately any agency relationship between Experian and an individual or entity, Archer or otherwise, upon which to base vicarious liability. Again, noting Plaintiffs' use of passive voice in their TAC, it is difficult to discern the exact individual or entity that Plaintiffs allege actually sent the text messages. With respect to Archer, the Plaintiffs' flow chart merely alleges that "Experian routes [the] campaign ready file to Archer," that "Archer processes [the] campaign ready file," and that an "Automated process creates audience segments on Archer platform." *Id.* ¶ 33. Plaintiffs further allege that "Experian sends the information to [Archer's] texting platform." *Id.* ¶ 34. Moreover, Plaintiffs assert that Experian:

> is the party with whom AEO contracted to send the texts; it is the party that was provided with the campaign request form; it was the party to whom AEO deployed the campaign ready file; it was the party that sent the information to Archer in order for Experian to use Archer's platform; and it was the party that scheduled the text messages to be sent. Experian is also the party that sent AEO the reports on the results of the text messaging campaigns.

---

[12] Similar to an agent, the Restatement (Third) of Agency defines a "subagent" as:

a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal. The relationship between a subagent and the appointing agent and between the subagent and the appointing agent's principal are relationships of agency as stated in §1.01.

Restatement (Third) of Agency § 3.15.

*Id.* ¶ 42. Finally, Plaintiffs allege that to the extent Archer is deemed to have sent the texts, Experian is vicariously liable for the actions of Archer because "Archer is Experian's agent in that Experian used Archer's texting platform to send the texts." *Id.* ¶ 43.

Significantly absent from Plaintiffs' allegations, however, is any factual content regarding the relationship between Experian and Archer. Plaintiffs seem to suggest that the allegations that Experian "had the right to control the sending of the texts" and "in fact controlled and even scheduled the sending of each segment of the texts" are sufficient to plead Experian's vicarious liability for Archer's actions. Pls. Opp'n at 12. Indeed, Plaintiffs argue, without support, that "[w]hether Experian Marketing sent the texts via Archer's messaging platform or whether Archer sent the texts after Experian Marketing directed it to do so is irrelevant to the issue of vicarious liability." *Id.* But to plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiffs must allege *some* facts regarding the relationship between an alleged principal and agent (or an alleged agent and sub-agent) and cannot simply allege general control in a vacuum. *Cf. Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 n.6 (9th Cir. 2014), *cert. granted*, *Campbell-Ewald Co. v. Gomez*, 135 S. Ct. 2311 (2015) ("We need not determine whether [the defendant] constitutes a seller under this definition, as we conclude that vicarious liability turns on the satisfaction of relevant standards of agency, irrespective of a defendant's nominal designation" and "such a construction would contradict 'ordinary' rules of vicarious liability, . . . which require courts to consider the interaction between the parties rather than their respective identities." (citation omitted)). Mere conclusory allegations that Archer was Experian's agent or that Experian had the right to control the sending of the texts, without more, fails to plead an agency relationship (between Experian and Archer or any other entity) sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA. *Jackson*, 88 F. Supp. 3d at 138–39 ("[E]ven viewing the allegations in a light most favorable to the [p]laintiff . . . , the

[c]ourt concludes that the [p]laintiff's non-conclusory allegations with regard the agency relationship between [defendant] and [a separate company that allegedly sent the text message on behalf of defendant] fail to 'nudge' his claims against [defendant] 'across the line from conceivable to plausible . . . .' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In this regard, absent from the second amended complaint is any allegations that [defendant] had the power to give 'interim instructions' to [the separate company], or any non-conclusory suggestion of 'direction' or 'control' by [defendant] of [that company].").[13]

## CONCLUSION

For the foregoing reasons, Experian's Motion to Dismiss (Dkt. 123) is GRANTED. Because Plaintiffs' claims against Experian are dismissed, Experian's Motion to Strike the Class Allegations in the Third Amended Consolidated Complaint (Dkt. 124) is hereby dismissed as moot. The Clerk of the Court is respectfully directed to terminate docket entries 123 and 124 under the lead case, 14-CV-02440.

**SO ORDERED.**

**Date: November 30, 2015**       **VALERIE CAPRONI**
**New York, New York**             **United States District Judge**

---

[13] Plaintiffs' reliance on *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-6131, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014), *Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 704 (M.D. Pa. 2014), and *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (2014), is unavailing because, in each of those cases, the plaintiffs alleged at least some factual matter to support an agency relationship. In *McCabe*, plaintiffs alleged, although sparsely, a contractual relationship. 2014 WL 3014874, at *4. In *Hartley-Culp*, plaintiffs submitted actual transcripts of a voice message allegedly from Defendant that stated the speaker was calling "on behalf of" the alleged principal, Fannie Mae. 52 F. Supp. 3d at 704. In *Kristensen*, "there was a 'downhill' series of contractual relationships starting with the Lender Defendants down through Click Media, and the benefits of the text message (leads for potential payday lending customers) flowed back 'uphill' through Click Media and LeadPile to the Lender Defendants." 12 F. Supp. 3d at 1302. Here, although Plaintiffs allege a contract exists between AEO and Experian, TAC ¶¶ 42, 44, Plaintiffs fail to allege any facts regarding the relationship, contractual or otherwise, between Experian and an alleged sub-agent that actually sent the texts, whether Archer or another company, to establish a factual basis for an agency relationship.